UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KENWANNA WHEAT,

    Plaintiff,

    v.

COLUMBUS BOARD OF EDUCATION
COLUMBUS PUBLIC SCHOOLS,

    Defendant.

Case No. 2:13-cv-819
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION & ORDER

Kenwanna Wheat filed this action against the Columbus City School District Board of Education ("School District") alleging disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02(A). This matter is before the Court on the School District's Motion for Summary Judgment. (ECF No. 18.) For the following reasons, that motion is **GRANTED**.

### I. BACKGROUND

Wheat began working for the School District as a "Custodian II" in 2006. Her primary duties included cleaning, mopping, and scrubbing floors. (Custodian II; ECF No. 15-2.) A Collective Bargaining Agreement ("CBA") between the Columbus Board of Education and the Columbus School Employees Association governed her employment. (Agreement; ECF No. 15-6.)

In early 2009, Wheat sustained an injury on the job. (Accident Report; ECF No. 15-3.) She continued working for five more months until June 18, 2009, when she ultimately sought

medical treatment for her injury and applied for a leave of absence under the Family Medical Leave Act. (Leave Application at 1; ECF No. 22-2.) Wheat's doctor diagnosed her with shoulder tendinitis and shoulder impingement, and declared her unable to return to work. Her unpaid leave of absence began August 3, 2009. (Wright Aff. ¶ 4; ECF 18-1.)

The School District extended Wheat's leave of absence seventeen additional times in response to communication from her doctors and the Bureau of Workers Compensation ("BWC") that she remained unable to return to work. (Letter for Leave of Absence; ECF No. 15-5.) Her leaves of absences repeatedly were extended until the date indicated by her doctor as her estimated return to work date.

For each extension, the School District provided Wheat standard letters advising her of the necessary steps to either further extend her leave of absence or return to work. *Id.* For an extension, she needed her doctor to contact the School District before the final day of the leave term. To return to work, the letter stated, "your physician must provide an actual return to work release stating that there are NO RESTRICTIONS" within "14 days of your reporting to the Board Physician for final return to work clearance." The letter also pointed out that leaves of absence were subject to the CBA's regulations.[1] (Extension Letters; ECF No. 15-5.) Article 16.2 of the CBA states that "the Board of Education shall grant a leave of absence for a period not exceeding two school years where illness or other disability is the reason for the request." (CBA; ECF No. 15-6.)

At some point in December 2011, Wheat maintains that her BWC caseworker began preparing her to return to work and attempted to call the School District to request information

---

[1] Although neither party raises the issue, the letters refer to "Articles 15.2 and 15.3" of the CBA but the relevant provisions in the Collective Bargaining Agreement on leaves of absence appear in Articles 16.2 and 16.3. (CBA.)

about her job duties, but received no response. (Wheat Dep. at 37; ECF 15-1.) Then, in February 2012, Wheat sought Temporary Total Disability ("TTD") benefits through the BWC, submitting an application that contained her doctor's opinion that she could not return to her custodial position at that time and estimated a new return to work date of May 2, 2012. (TTD Application; ECF No. 15-7.)

Wheat's final leave of absence was extended until February 2012. That month, Wheat entered into a vocational rehabilitation plan with the BWC intended to provide her therapy through April. The plan noted that the School District indicated in mid-February that a position may not be available for Wheat in light of its policy that kept her job open for two years, which Wheat had exceeded. (Wright Aff. at 10, 13; ECF No. 18-1.) A subsequent progress report in March stated that the School District made known that no position existed for Wheat. (*Id.* at 16.)

In response to this report, Wheat went to see Adrianne Thomas, the human resources secretary at the School District in charge of leaves of absences, and handed her a letter she had written. The letter indicated that she "will be returning to work" on March 26, 2012, that she is "disabled," would "need accommodation," and could "perform [her] job with minimum to few restrictions." (Letter; ECF 15-8.) Wheat, however, provided no documentation from a physician releasing her to return to work. (*See* Wheat Dep. at 59; ECF No. 15-1). Thomas informed her that she should have previously received word that she had been terminated because her current leave of absence expired and she exceeded the two-year limitation. (*Id.* at 49.) But Wheat told her that no one at the School District gave her such notification. About a week later, she received her termination letter. (Letter; ECF 15-5 at 18.)

Wheat then filed a charge of disability discrimination with the Ohio Civil Rights Commission. (ECF No. 15-10.) That commission determined that "no probable cause" existed to

3

accuse the School District of an unlawful discriminatory practice (ECF No. 2-1 at 3), and the Equal Employment Opportunity Commission adopted these findings (ECF No. 2-1 at 6). Wheat now sues alleging disability discrimination and a failure to accommodate, and the School District moves for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Eberling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 334, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the moving party. *See Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be

sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III. DISCUSSION

#### A. Qualified Individual

Wheat maintains that she was qualified and could perform the essential duties of her custodial position with reasonable accommodation, but the School District fired her instead of providing such an accommodation. She asserts claims of disability discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Ohio Revised Code § 4112.02(A).

"As an initial matter, analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02 and the Rehabilitation Act." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citations omitted); *see also Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012); *Back v. U.S. Postal Serv.*, 210 F.3d 371 (6th Cir. 2000). Therefore, the following discussion of the Americans with Disabilities Act applies to all of [Wheat's] claims." *Jakubowski*, 627 F.3d at 201.

To establish a claim for disability discrimination under the ADA, Wheat must show that: (1) she is disabled, (2) she is otherwise qualified to perform the job requirements with or without reasonable accommodation, (3) she suffered adverse employment action, (4) the employer knew or had reason to know of her disability, and (5) she was replaced or the job remained open. *See Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012). Although her disability need not be the "sole" cause of the adverse employment action, Wheat must establish

5

that it was a "but for" cause. *Id.* at 316. The elements of Wheat's failure to accommodate claim generally mirror these elements, as it requires: 1) that she was disabled under the ADA, 2) she was otherwise qualified for the position, with or without reasonable accommodation, 3) her employer knew or had reason to know of her disability, 4) she requested an accommodation, and 5) the employer failed to provide the necessary accommodation. *See Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011).

Here, the second element of each claim is dispositive. The School District argues that Wheat is not a "qualified individual" under the ADA because her physician had not cleared her to return to work. The Court agrees.

A "qualified individual" under the ADA "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions of the job can be discerned by consulting written job descriptions and the employer's judgment as to which duties are essential. *See id.*; *see also Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014). Wheat's job as a custodian, which involves manual labor, required her attendance. *See Melange v. City of Ctr. Line*, 482 F. App'x 81, 84 (6th Cir. 2012). "Thus, if [Wheat] cannot show that [she] was authorized to return to work prior to [her] termination, [she] cannot be considered a 'qualified individual' and [her] *prima facie* case fails." *Id.*

Wheat had no such authorization. When she applied for TTD benefits in February 2012, her physician estimated that she could not return to her custodial work until May 2, 2012—approximately two months after her termination and over two years since her initial leave. (TTD Application; ECF No. 15-7.) Before that, she continually received approval for her leaves of absence because her physicians indicated to the School District that that she could not return to

6

work. (Wright Aff. ¶ 5; ECF No. 18-1.) Without authorization to return to work, Wheat could not satisfy the position's requirement, and thus she was not a "qualified individual." *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("[B]ecause the plaintiff was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job."); *Melange*, 482 F. App'x at 84 ("This court has flatly held that [a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.") (internal quotation marks omitted).

Resisting this conclusion, Wheat points to her deposition testimony in which she testified that her physician gave her permission to return to work. But this belies her doctors' reports to the School District that she was unable to return to work and thus needed her leave extended. And, she offers no other evidence to corroborate her assertion. *See Adams v. Tennessee Dep't of Fin. & Admin.*, 179 F. App'x 266, 274 (6th Cir. 2006) (holding plaintiff presented insufficient evidence of pretext at summary judgment stage where he relied on his own deposition testimony's "bald[] assert[ions]"). Indeed, she was asked directly at her deposition, "are you aware of any document that releases you to return to work on March 26, 2012?" Her answer: "No." (Wheat Dep. at 59:1-4.)

Wheat also testified that *she* believed that she was qualified. (*See* Wheat Dep. at 61:9-10 ("I don't think there's anything that I could not do."); *id.* at 63:13-15 ("I believe [the job] could be done."). But no evidence in the record supports this belief, and in any event, her own opinion of her capabilities does not show that she was qualified to perform the essential functions of the job. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.");

*see also Cisneros v. Wilson*, 226 F.3d 1113, 1130–31 (10th Cir. 2000) (holding that plaintiff's own belief in her ability to recover from a disability was insufficient to create a triable issue of fact, especially where "her belief is inconsistent with the evidence from her own doctors"), *overruled on other grounds by Bd. of Trs. Of Univ. of Ala. v. Garrett,* 531 U.S. 356 (2001). The School District required that Wheat return to work only with the written permission from her physician, as it indicated in the leave of absence approval letters. Wheat never had such permission.

Last, Wheat presses that she performed her job for six month before taking leave and that this shows her qualification. But this contention overlooks the two-plus years she needed to take off from work. And, as stated above, she was not qualified because she was not authorized by her doctor to attend work. *See Gantt*, 143 F.3d at 1047.

Because no genuine issue exists as to whether Wheat was a qualified individual, she cannot show that disability discrimination or a failure to accommodate. *See Lai Ming Chui v. Donahoe*, 580 F. App'x 430, 437 (6th Cir. 2014) ("Ultimately, Chui's disability discrimination claim fails for the same reason her failure to accommodate claim fails: she has not established that she is a qualified individual with a disability because she could not perform the essential duties of her mail processing clerk position with or without a reasonable accommodation.").

Wheat nevertheless presses that the School District failed to engage in an "interactive process" to help her find suitable work. Once an accommodation is requested, the employer has a duty to engage in an "interactive process" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 871 (6th Cir. 2007) (internal quotation marks omitted).

This claim fails for two interrelated reasons. First, the "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that [s]he proposed a reasonable accommodation." *Rorrer*, 743 F.3d at 1041. Wheat proposed no reasonable accommodation to the School District, as her letter to her employer stated only "I need accommodation. I am able to perform my job with minimum to few restrictions." (Letter; ECF No. 15-8.)[2] Second, she fails to explain how her disability—that precluded her from satisfying her job's essential attendance requirement—could have been reasonably accommodated. An employer violates the interactive process "requirement *only if,* among other things, the employee can demonstrate that the employee could have been reasonably accommodated but for the employer's lack of good faith." *Denczak v. Ford Motor Co.*, 215 F. App'x 442, 446 (6th Cir. 2007) (per curiam) (internal quotation marks omitted). Thus, Wheat does not carry her burden to show an interactive process violation. *See Trout v. Aerospace Testing Alliance*, 303 F. App'x 272, 274 n.1 (6th Cir. 2008) ("[E]ven if [Defendant] did not engage in a good faith interactive process, [Plaintiff] cannot prevail on this point because

---

[2] Wheat also charges that the School District failed to provide relevant information to her BWC case manager so that he "could determine [her] specific restrictions." But no admissible evidence in the record bolsters this claim. She points to her deposition, where she explained:

> I spoke to -- I was working with the BWC to go back to work, and [BWC employee] Mr. Phillips called initially -- he was the contact with the school board -- to get my restrictions so that he can write up my expectations and goals, but he came back and told me that I didn't have a position to go to.

(Wheat Dep. at 37:12-24.) This is inadmissible hearsay that cannot create a genuine issue because Wheat is testifying about Mr. Phillips's statements to prove the truth of the matter asserted. *See* Fed. R. Evid. 802; Fed. R. Evid. 801(c)(2); *see also N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) ("The above testimony cannot create a genuine issue of material fact because it is inadmissible hearsay."). Though Wheat maintains that she worked with BWC case managers, none were deposed or provided any testimony regarding their alleged contact with the School District.

[Plaintiff] would be unable to establish that he could have been accommodated but for [Defendant's] failure to engage in the interactive process."); *see also Deister v. AAA Auto Club of Michigan*, No. 13-CV-13993, 2015 WL 1005408, at *21 (E.D. Mich. Mar. 5, 2015) (holding no interactive process violation where plaintiff "has not met his burden to propose an objectively reasonable accommodation and show that it was possible").

### B. Legitimate Nondiscriminatory Reason for Termination

Though not needed here, the Court notes that no genuine issue of material fact exists as to whether the school district's reason for terminating Wheat's employment was pretext. The CBA governing Wheat's employment allowed the School District to terminate an employee upon reaching a two-year leave of absence limitation. The School District maintains that she was terminated because she exceeded the contractual two-year leave of absence limit. (*See* Termination Letter; ECF No. 15-5 at 18; Wright Dep. at 25, 29; ECF No. 17-1.) Wheat declines to challenge the reasonableness of the School District's two-year policy, and for good reason. *See Melange*, 482 F. App'x at 86 ("[B]y providing for the termination of an employee after one year of disability leave, the CBA is not an outlier; in fact, a one-year leave period appears rather standard.")

Instead, Wheat questions whether this policy actually drove the School District's decision, pointing out that it twice approved her leave extensions beyond the two-year limit. But this shows only that she received a benefit beyond what the contract required. Wheat offers no evidence to show that the School District's reason had no basis in fact, that it did not actually motivate the School District's action, or that it was insufficient to motivate the termination. *See Romans v. Michigan Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (outlining ways to show pretext). Wheat argues that her termination "was consistent with [the School District's]

10

pattern and practice, as evidenced by the other 15-20 employees with restrictions that were on medical leave for more than two years" and were subsequently terminated. (Resp. at 12.) But again, she provides no evidence linking "the other 15-20 employees[']" disability with their termination. And if anything, this shows that the School District consistently applied its policy to employees on leave who exceeded the two-year limit.

For its part, the School District maintains that these employees initially received extensions beyond the two-year limit because it was advised that it could not lawfully terminate employees on worker's compensation leave. (Thomas Dep. at 85.) But after discussing this practice with legal counsel, the School District learned that it could end the tenure of such employees. (Wright Dep. at 62-63.) Whatever the legal merits of the School District's position, the facts show no evidence or inference of pretext.

Last, Wheat notes that she never received notice from the School District before she lost her job. But the letters extending her leaves of absences continually reminded her that such leaves were subject to the CBA's regulations, which included the two-year leave policy. (Extension Letters; ECF No. 15-5.) And, Wheat does not point to anywhere in the CBA that mandates notice. Thus, the Court does not find the failure to provide notice to raise a genuine issue as to pretext.

### IV. CONLUSION

For the foregoing reasons, the School District's Motion (ECF No. 18) is **GRANTED**.

**IT IS SO ORDERED.**

_6-29-2015_
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE

11